IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **HORSEMEN'S BENEVOLENT & PROTECTIVE ASSOCIATION,** : <br><br> **Plaintiff,** : <br><br> v. : <br><br> **BELTERRA PARK,** *et al.*, : <br><br> **Defendants.** : | **Case No. 2:20-cv-6471** <br><br> **Chief Judge Algenon L. Marbley** <br><br> **Magistrate Judge Kimberly A. Jolson** |

**OPINION & ORDER**

This matter is before the Court on Plaintiff's Motion for Prejudgment Interest. (ECF No. 48). In its Motion, Plaintiff moves this Court under Ohio common law to grant prejudgment interest on the funds that this Court determined to be due Plaintiff in its March 30, 2023 Order (the "Summary Judgment Order"). For the reasons set forth herein, Plaintiff's Motion (ECF No. 48) is **GRANTED IN PART AND DENIED IN PART**.

## I. INTRODUCTION

This case involves a dispute over retroactive funds owed Plaintiff by Defendants under an Ohio statutory scheme concerning the operation of video lottery terminals ("VLTs" or "video slots") at Ohio's horse racing tracks ("racinos"). Plaintiff is a non-profit trade organization representing thoroughbred owners and trainers who race at Ohio's three commercial thoroughbred racetracks, including Belterra Park. (ECF No. 1 ¶ 2). Defendants are Belterra Park, Pinnacle Entertainment, Inc., and Penn National Gaming, Inc.

In 2009, Ohio authorized the operation of VLTs at Ohio's racinos. (*Id.* ¶ 12). Ohio's General Assembly provided a framework requiring each racino's net-win VLT revenues to be split between the track and the Ohio Lottery Commission. (*Id.* ¶ 13). The General Assembly further

1

required that the track pay out 9–11% of its commission (the "VLT commission" or the "commission") for the benefit of horse racing and horse breeding in Ohio. (*Id.* ¶ 14).

In 2013, the Ohio General Assembly enacted O.R.C. § 3769.087(C), giving the Ohio State Racing Commission (the "Racing Commission") greater responsibilities over setting the percentage of racinos' VLT commissions owed to the horsemen's associations. (*Id.* ¶¶ 17–18). The statute sets forth two methods to determine the exact percentage of VLT commission to be paid. First, the racino and the relevant horsemen's association could agree and contract for that percentage. Second, absent an agreement, the Racing Commission would set the percentage rate via an administrative rule, to be paid to the Racing Commission for the benefit of horse breeding and racing. O.R.C. § 3769.087(C). In the latter case, the Racing Commission is required to set a rate for each racino within six months of the date the racino begins its VLT operations. *Id.*

On May 1, 2014, Belterra Park reopened without having reached a rate agreement with Plaintiff. (*Id.*). Belterra Park therefore entered into an Escrow Agreement with the Racing Commission on that same day, setting aside 9% of Belterra Parks' VLT commission to be paid to Plaintiff until the Racing Commission set the final rate by rule. (ECF No. 6 at Ex. A; ECF No. 1 ¶ 20). Plaintiff began receiving the payments under the Escrow Agreement on May 1, 2014. (ECF No. 1 ¶ 20).

It was not until June 27, 2018, that the Racing Commission finally passed Resolution 2018-05 ("the Resolution") setting the rate for Belterra Park at 9.95%. (ECF No. 6 at 4; ECF No. 6 at Ex. B). On July 1, 2018, Defendants began paying, and Plaintiff began receiving, the 9.95% commission rate. (ECF No. 1 ¶ 24). Plaintiff thereafter demanded to be paid the difference between that rate and the 9% placeholder rate that it was paid from May 1, 2014, through July 1, 2018. (*Id.* ¶ 26–27). This would mean the real rate for that four-year period was 9.95%, and the Escrow

2

Agreement was just a temporary placeholder that would require the remainder, a "true-up" payment[1], to be paid once the Racing Commission set a separate rate. Defendants did not make the catch-up payment.

Plaintiff filed a two-count Complaint on December 18, 2020, asserting claims for conversion and unjust enrichment. (ECF No. 1). Plaintiff's core factual allegation is that Defendants failed to pay OHBPA the marginal 0.95% of Belterra Park's VLT commission between May 1, 2014, and July 1, 2018. Defendants argued that Plaintiff is not entitled to the payments. Defendants moved to dismiss for failure to state a claim, which this Court denied on September 30, 2021. (ECF No. 24).

On July 15, 2022, Plaintiff filed a Motion for Summary Judgment on both claims. (ECF No. 31). Plaintiff also therein moved for prejudgment interest on its conversion claim on the basis that "Ohio law" requires courts to award it on converted funds. (*Id*. at 15). In its Summary Judgment Order, this Court found Plaintiff to be entitled to the catch-up payments in the amount of $2,872,910.45. (ECF No. 47 at 17). Because Plaintiff did not indicate whether it moved for prejudgment interest pursuant to statute or common law, however, this Court denied that request. (*Id*. at 19).

On May 9, 2023, Plaintiff filed its Motion for Prejudgment Interest. (ECF No. 48). Plaintiff's Motion is ripe for this Court's consideration.

## II.  STANDARD OF REVIEW

When a party moves for an award of prejudgment interest under Ohio common law, "[a]n award of prejudgment interest on a conversion claim is within the trial court's discretion as part of

---

[1] The parties have interchangeably used the terms "true-up" and "catch-up" to describe the alleged past due payments owed Plaintiff. For the sake of simplicity, this Court will hereinafter refer to these as "catch-up" payments.

3

the compensatory award." *Masterson v. Weaver*, 5th Dist. Morgan No. CA-05-014, 2006-Ohio-1069, ¶ 52. Further, "[w]hen prejudgment interest is awarded in a conversion action, pursuant to the common law, the date for the calculation of the interest remains in the sound discretion of the trial court." *Id*. at ¶ 50. As explained by a fellow court in this district, an award of prejudgment interest pursuant to Ohio common law "does not constitute a special proceeding like moving for prejudgment interest pursuant to Ohio Rev. Code § 1343.03(C)." *Gorsha v. Clark*, No. 2:18-CV-508, 2022 WL 278973, at *10 (S.D. Ohio Jan. 31, 2022) (citing *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 657, 635 N.E.2d 331, 347 (1994)).

### III. LAW AND ANALYSIS

In its Motion, Plaintiff seeks prejudgment interest, pursuant to Ohio common law, covering an interest period spanning from May 1, 2014, through the date of final judgment.

Plaintiff argues that it must be made whole for the nine years that Defendants retained the money to which this Court determined Plaintiff was entitled. According to Plaintiff, it has met each of the three prerequisites to show its entitlement to prejudgment interest: (1) this Court granted Plaintiff summary judgment on its claim for conversion against Belterra Park; (2) Plaintiff and Defendant have not settled; and (3) Plaintiff sought prejudgment interest in its prayer for relief. Concerning the amount of prejudgment interest to which Plaintiff is entitled, it contends that the interest should be calculated at the statutory rate provided for by O.R.C. § 5703.47. Plaintiff asserts that the interest period should begin on May 1, 2014, as that was the date upon which Plaintiff's entitlement to the 9.95% rate began. Plaintiff's calculations generate a total interest due amounting to $809,446.13, as of May 1, 2023.

Defendants do not deny that Plaintiff is entitled to prejudgment interest; its contentions only concern the amount due Plaintiff. For their part, Defendants assert that, under Ohio common

4

law, prejudgment interest begins to run from the date the conversion claim accrued. In this case, Defendants contend, Plaintiff's claim for conversion accrued "on or around" June 27, 2018—the date that the Racing Commission determined the applicable rate to be 9.95%. Defendants argue that prejudgment interest could not have accrued before that date because, under Ohio common law, a claim for conversion does not accrue until the complainant has discovered or should have discovered the conversion. Here, Defendants reason, neither party knew that the rate due Plaintiff was 9.95% until the Racing Commission made that determination. Defendants' calculations generate a total interest due amounting to $578,281.45, as of May 31, 2023.

Although Ohio courts have noted that Ohio common law generally disallowed prejudgment interest in civil actions arising out of tortious conduct, "an action in conversion was a well-established exception to the rule." *Masterson*, 5th Dist. Morgan No. CA-05-014, 2006-Ohio-1069, ¶ 45. Under that rationale, "common law provides that interest in actions based upon the tortious conversion of personal property may run from the time of the conversion." *Id*. at ¶ 49. The purpose of an award of prejudgment interest under common-law principles "is to award the person subject to the conversion full compensation for the loss." *Cugini & Capoccia Builders, Inc. v. Ciminello's, Inc.*, 10th Dist. Franklin No. 06AP-210, 2006-Ohio-5787, ¶ 30. The interest is to be paid as part of a compensatory award, not as a statutory penalty. *Id*. The question to be answered by the court is whether it determines prejudgment interest in the form of compensatory damages to be necessary to make the plaintiff whole. *Masterson*, 5th Dist. Morgan No. CA-05-014, 2006-Ohio-1069, ¶ 51.

Defendants do not deny that Plaintiff is owed at least some amount of prejudgment interest. This Court nonetheless considers the following inquiries in turn: (1) whether Plaintiff is entitled to prejudgment interest; and (2) if so, in what amount the interest shall be.

5

This Court first determines that Plaintiff is entitled to prejudgment interest. The elements of a conversion claim under Ohio law are: (1) the plaintiff's ownership or right to possession of the property at the time of conversion; (2) the defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages. *Figgie v. Figgie*, 8th Dist. No. 109834, 2021-Ohio-1812, 173 N.E.3d 122, ¶ 11 (internal quotations omitted). This Court previously granted summary judgment on Plaintiff's conversion claim, finding that Plaintiff had a statutory entitlement to the catch-up funds. (ECF No. 47 at 18). Defendants' conversion had the effect of denying to Plaintiff, for several years, funds to which it was entitled. In its discretion, this Court finds that an award of prejudgment interest is necessary under these circumstances to make Plaintiff whole. *See DeSantis v. Smedley*, 34 Ohio App.3d 218, 221, 517 N.E.2d 1038, 1042 (8th Dist.1986) (explaining that "[i]t is within the discretion of the trier of fact to include an element of interest within the damage award.").

This Court next determines the amount that the prejudgment interest shall be. This determination requires this Court to ascertain both the prejudgment interest period and the applicable interest rates.

Under O.R.C. § 3769.087(C), the commission rate to be paid from Belterra Park to Plaintiff could be set only by an agreement between the parties or a determination of the applicable rate made by the Racing Commission. (ECF No. 47 at 15–16). Because Plaintiff never entered into an agreement with Belterra Park, this Court found that "the only other statutorily approved method available to set the rate was by a determination from the Racing Commission." (*Id*. at 16). The Racing Commission did not determine the applicable commission rate of 9.95% until July 27, 2018. (*Id*. at 3–4). Because Plaintiff did not gain the right to be compensated at the 9.95% rate until then, Plaintiff's conversion claim could not have arisen until that date. Consequently, the

6

interest period in this case shall run from July 27, 2018, until the date of the entry of final judgment in this matter. Plaintiff has indicated that the matter of prejudgment interest is the final issue in this case upon which it seeks this Court's adjudication. (See ECF No. 48 at 8; ECF No. 49). Given that this Order resolves the remaining issues in this case, it constitutes the final judgment.

With that settled, there remains only the task of determining the amount of the prejudgment interest. Absent a contractual agreement setting a rate of interest, the amount of prejudgment interest is calculated at a rate per annum pursuant to Ohio Rev. Code § 5703.47. Ohio Rev. Code. § 1343.03(A). Because the parties did not enter into an agreement concerning prejudgment interest, this Court shall calculate the interest at the default statutory rate—a rate determined annually by the Ohio Tax Commissioner. *See Blues To You, Inc. v. Auto-Owners Ins. Co.*, No. 1:21-CV-00165, 2022 WL 10192897, at *6 (N.D. Ohio Oct. 17, 2022). The Ohio Tax Commissioner determined the applicable rate to be 4% in 2018, 5% in 2019 and 2020, 3% in 2021 and 2022, and 5% in 2023.[2]

Based on this Court's holding that Defendants owe Plaintiff the principle sum of $2,872,910.45 (ECF No. 31 at 17), the prejudgment interest in this matter is calculated as follows:

| Prejudgment Interest from June 27, 2018, through August 28, 2023 | | | | |
|---|---|---|---|---|
| Year | Principal | Annual Statutory Rate | Days Accumulated | Interest |
| 2018 | $2,872,910.45 | 4% | 188 | $59,189.83 |
| 2019 | $2,872,910.45 | 5% | 365 | $143,645.52 |
| 2020 | $2,872,910.45 | 5% | 366 | $143,645.52 |
| 2021 | $2,872,910.45 | 3% | 365 | $86,187.31 |
| 2022 | $2,872,910.45 | 3% | 365 | $86,187.31 |

---

[2] *See* OHIO DEPARTMENT OF TAXATION, ANNUAL CERTIFIED INTEREST RATES, http://tax.ohio.gov/researcher/interest-rates (last visited July 17, 2023).

| | | | | |
|---|---|---|---|---|
| 2023 | $2,872,910.45 | 5% | 240 | $94,451.85 |
| | | | Total Interest: $613,307.34 | |

### IV. CONCLUSION

Based on the foregoing, this Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Prejudgment Interest (ECF No. 48). Specifically, this Court finds that prejudgment interest is due Plaintiff for the period spanning June 27, 2018, through the date of this Order—not for Plaintiff's proposed interest period beginning May 1, 2014. Defendants are jointly and severally **ORDERED** to pay Plaintiff the principal sum of $2,872,910.45 along with $613,307.34 in prejudgment interest (totaling $3,486,217.79), exclusive of costs.[3] The Clerk shall enter final judgment accordingly.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED:  August 28, 2023**

---

[3] As the "prevailing party" in this matter, Plaintiff is entitled to costs under Federal Rule of Civil Procedure 54(d). Fed. R. Civ. P. 54(d)(1). If Plaintiff intends to seek costs in this matter, it must do so in accordance with Local Rule 54.1. S.D. Ohio Civ. R. 54.1.